May it please the Court, Renee Maness on behalf of the petitioner Richard Mills. This was a close case. Richard Mills was accused of assaulting a man who was younger than he was, much healthier than he was, 50 pounds heavier than he was, and four inches taller than he was. Not only that, Mr. Mills was an individual who had recently had multiple back surgeries, a fact known by Trammell, the man he was accused of assaulting. The jury returned a verdict of 10-2. Two of the jurors believed Mr. Mills when he says, in fact, I acted in self-defense. One of the jurors on that panel was a juror who was presumptively biased against Mr. Mills based upon the evidence that was ultimately adduced in PCR. That concept that this juror might be biased was not a surprise to anyone. Mr. Mills had a brother named Brian Mills who was a supervisor at the major employer in the area, the Ore-Ida plant. Most of the individuals who lived there There was no legible answer. Please, what did she answer? According to the trial counsel, she denied it. She was specifically asked, do you know Brian Mills? She denied it. So when you take us down that road, you want us to go outside the record and make a finding that she had to know him. I gather. The actual evidence that she knew him is in the record. Sure it is. He worked the same shift she worked, he said. Everybody on that shift knew him, so it's said, and so on and so forth. But don't we have to make a factual finding if we go the way you want us to go? Actually, I'm not sure I'm asking you to make a factual finding. What are you asking us to do? The evidence that was seduced ultimately at the post-conviction court showed that Brian Mills was the supervisor who, less than six months before the trial, personally disciplined this woman, that she resented that discipline and asked to be transferred off the shift he worked on. At the time of the motion for new trial, the state trial court specifically said, while you presented evidence, the generic evidence, that Brian Mills is a supervisor who's well-known and a lot of people in the plant were talking about this incident, you haven't linked this juror to Brian Mills. If the evidence that linked this juror to Brian Mills, which was the evidence of the discipline ultimately adduced in post-conviction, had been presented at the motion for new trial, the trial court, more than reasonably probable, would have granted that motion because the specific statement of the trial court was, and this is in the ER, I think I miscited the page number in my brief. I said it was 235. That's actually the RT page number. The ER page number is 293. The statement of the trial court was, in the absence of some evidence that Ms. Capodalla, I hope I'm pronouncing her name right, did know, as opposed to simply saying, under the circumstances she might have known, is insufficient. He was looking for that evidence. That evidence was there. It was finally presented at the post-conviction court level. Unfortunately, when the post-conviction court analyzed that evidence, the post-conviction court inaccurately made the finding that this evidence postdated the trial, postdated the voir dire, postdated the motion for new trial. In fact, this discipline was in December. The crime was in March. The trial was in the summer. The evidence existed before the trial. The evidence was available at the time of the motion for new trial. If the evidence had been presented based upon what the state trial court was saying, it would have granted the motion for new trial. And this wasn't a situation where trial counsel didn't realize this was an issue. He asked about it. He filed a motion for new trial. He had Brian Mills talk generically. But he did not do the underlying investigation necessary to support his motion for new trial to find the evidence linking the jurors. That, to Brian Mills. That evidence was available. Well, pardon me. Didn't the supervisor deny knowing the juror at the motion for new trial and also answered negatively as to having any idea why Capaldo, the juror, might know him? In that, I don't think it's inconsistent with the fact that the juror might resent that supervisor and he might not remember her. He testified he supervises swing shifts, he's a training supervisor, he moves around a lot. It's a plant of 900-odd people. He probably disciplines a lot of people that he does not necessarily remember. The question is whether Capaldo remembers him. She testified at the trial, at the motion for new trial, she didn't. She does not testify at the motion for new trial, Your Honor. No, pardon me. At the early time when Judge Farris was recalling it, she said, I didn't know him. Correct. And the question is whether that's the case. Whether she lied. Correct. Where is the evidence that she lied? The discipline that she was given less than three months earlier or less than six months earlier by this precise same supervisor. Well, there was a supervisor between her and Mills. I'm sorry? There was a supervisor between Capaldo and Mills. Mills, another supervisor, and then Capaldo. Why is it necessary to find the – what's the evidence that shows, ineluctably, that Capaldo lied when she said she didn't know Mills? There's no admission. I didn't think so. That Capaldo lied. Right. There is the inference from the fact that in post-conviction, Brian Mills specifically says, yes, I am the one who delivered this discipline to her. She then – this documentation shows that she requested to be moved off my ship. I – she was suspended for a day. She was told that this type of misconduct continues. She'll be terminated. She specifically resented the misconduct. She believed that it was not appropriate. And all of that is in the ER at 477 to 480. So we did not get an answer from her on voir dire, which is one of the reasons why trial counsel was ineffective. He should have insisted on obtaining a clear answer from her on voir dire. The record showed that she didn't answer? There's – it's an illegible answer. It's the ER at page 47. Now, that, in your view, means she didn't answer. Well, what the trial counsel – We have to decide the case on the record, don't we? I think what trial counsel could have done – When you misstate the record, it causes me concern. I'm sorry. I'm – don't – I didn't mean to misstate the record. What it shows is that it was illegible. Her answer was illegible. Yes. Isn't that what it shows? And you say that, and we'll understand. What I'm saying is that there were things that trial counsel could have done to ensure the motion for a new trial, that there was a clear record of what she answered. I'm going to focus on that in particular to make certain I understand because I've tried cases. I don't know what the court reporter is hearing and not hearing. I've never gone to look at the court reporter's transcript until later. Are you faulting the attorney for not realizing the court reporter didn't get down the answer? That's a tough thing for an attorney to do. If you're moving for a new trial based upon juror bias, I think it's a pretty basic request that you get the transcript of that juror's answer. He didn't have that transcript. I mean, it wasn't as if he didn't know this was an issue. He knew this was the juror. He made a motion for a new trial based upon her bias. He didn't have that transcript. Maybe he thought like you that ineligible meant she didn't answer, and so he could say she didn't answer, as you said, and move on. Couldn't he? I don't know that he knew that at the motion for a new trial. I just know that the transcript wasn't there at the motion for a new trial. And what the transcript says is her answer was eligible. And had he known that at the motion for a new trial, he could have asked the trial court to bring her in and clarified the issue at that point. So there were ways that he could have. The issue is did he properly support his motion for a new trial? He didn't get a transcript. He didn't clarify what the juror said. He didn't do the investigation into who Brian Mills was and to how Brian Mills might have been linked to Juror Capodalla when there was evidence available that would have linked the two. And as a result, what the trial court said was, you don't have the evidence. The evidence was there. It was eventually brought out in post-conviction, where the post-conviction court misinterpreted the evidence as occurring at a later date and denied relief on a finding that it could not have been known. The district court properly ruled that, yes, in fact, it could have been known. It was there. It was available. Trial counsel just didn't do the job he should have done. He chose to file the motion. Once he appropriately chose to file the motion, he needs to do the work necessary to support it, and that's what he did not do, and that's why we contend he was ineffective. I'll reserve my remaining 20 seconds for rebuttal, Your Honor. We'll round it up to a four-minute. Thank you. May it please the Court, Uli Emue for the respondent. The petitioner has simply failed to show that counsel was deficient in this case. At the motion for new trial, counsel asked Brian Mills whether he knew Juror Capaldo, and he said that he did not. There was nothing more that counsel was reasonably required to do at that point. Even if he had gone to the Orita plant and gotten Juror Capaldo's disciplinary records, it still wouldn't have shown that Brian Mills knew her because those reports were signed by another foreman. I gather her point, though, is that he should have known her if he had disciplined her so recently. But there's nothing that counsel can do or was reasonably required to do if the witness that he goes and investigates and brings to court testifies under oath that he does not know this juror. Does it really matter if he knew her, or does it matter that she knew him? She's the juror. And she testified, or not testified, excuse me, during voir dire, the record indicates that the answer, the transcript indicates that the answer was inaudible. However, trial counsel submitted an affidavit in which he said that he recalled that her answer was no. And no one contested that fact or counsel's representation with respect to that, and that is part of the factual record in this case. I sort of assume that because if the answer is yes, then the next question is a different question. Right. And there is an affidavit that trial counsel prepared in which he said that he recalled that Juror Capaldo denied knowing Petitioner's brother. This brings us to the motion for new trial. He thinks she's answered yes. Or rather, you're right. He thinks she's answered no. That's why he doesn't pursue it. He hears that. The trial judge hears that. Frankly, the answer yes is so commonly followed by a follow-up question that the fact there wasn't a follow-up question, everybody probably assumes she answers no. She finds out from Brian Mills he doesn't know her, but the real question is whether she knows him. Now, Mr. Brian Mills' story does seem to be a little different at different points in time, but that seems to be the obvious subject to pursue at the time that the attorney is preparing this motion for new trial. Why wasn't that not pursued? Well, he asks whether, I mean, there's no indication that there's any kind of a hostile or adverse relationship between or any kind of a relationship between Juror Capaldo and Brian Mills. He does his investigation. Brian Mills says, I don't know her. She says, I don't know him. So there's really nothing more to do. Conveniently, two and a half years later, however long after, he comes in and says, oh, yeah, I did discipline her. So the issue is what more was counsel reasonably required to do to show that she was biased at that time? And when both people say, I don't know each other, they don't know each other, then what more is there for him to do? Wasn't there another piece of testimony? The trial judge questioned all the potential jurors, whether they had any association with any parties, attorneys, or witnesses, or had any knowledge, said or formed an opinion about the case, and Ms. Capaldo didn't say anything then. Correct. And then there's the second prong of the analysis, which is how was Mr. Mills prejudiced by anything here? There's no evidence that Ms. Capaldo was actually biased or even implicitly biased. Even if she did know Brian Mills, there's not the type of relationship there which would rise to the level of implicit bias, as this Court has examined that situation in other cases. Your colleague thinks a reasonable inference, if he did, in fact, if the brother did, in fact, create problems for her, that she would be biased against him. And in the juror room, she might be a person that he wouldn't want to have in there. That's what I think she thinks. And as the district court, I thought, interestingly pointed out, well, maybe if she worked for him and was continuing to work for him, she might have a reason to be biased toward the state and want to vote to acquit. In fact, there were two individuals who did vote to acquit. So that's why I think there isn't this necessarily existent implicit bias. So unless the Court has any further questions, I'll rest on my break. One thing, and I want to make certain I have the facts straight for this particular case, because sometimes we've got to move from one file to another. But the motion for new trial, was that focused, at least among other things, on this particular potential relationship or knowledge between the brother and the juror? Didn't Brian Mills testify specifically at that or offer an affidavit at the motion for new trial? I don't have as many cases to juggle as Your Honor, but I just finished arguing another one, and I want to make sure I answer accurately. My recollection, and it's my recollection, is that there was no affidavit presented by Brian Mills at the motion for new trial, and that the issue at the motion for new trial was simply limited to the issue of the relationship between Brian Mills and Juror Capaldo. Well, at least there was enough focus at that stage. I mean, it isn't that this was a topic unknown to the attorney at that point in time. The attorney had enough knowledge to focus on that relationship, and I take it that the criticism or the ineffectiveness that's been identified in this proceeding is that he didn't dig or go where he needed to go to get the information that would have been useful then. Is it enough to find out from Brian that he doesn't know her? I mean, shouldn't the question be posed to him at that point? You're a supervisor. Is she going to know you? Is there some reason she's going to be maybe upset with you that you don't realize? And I think that that issue was somewhat fleshed out at the hearing, and admittedly the examination wasn't extensive because Brian Mills simply didn't have a lot of information to offer, and I think his testimony was that he assumed that she knew him because he was a foreman and he worked on all the shifts. It's the standard, and I don't want to belittle the standard, but the standard is whether he received constitutionally effective counsel, and it's not, I mean, the threshold is not so high that he was required to go out and overturn every stone when neither of these individuals provided him any reason to do so. And even if he had, he would have gone to a writer and he would have found this document that she was disciplined in, and it's signed by someone completely different. Thank you. Thank you. The actual transcript of the motion for new trial is in the ER. It starts at page 278 and continues for several pages. It is basically focusing on Brian Mills and whether or not he might know Jura Capaldo. He discusses the fact that he had just come off the swing shift, that he believes all employees in all departments would, in fact, know him. At the end of that motion for a new trial, the court says, you haven't given me evidence linking Brian Mills to Capadalo. The fact that every employee might know him doesn't show that Capadalo did. If the trial court had that evidence, the trial court would have granted the motion for a new trial. This wasn't a situation where trial counsel had to go out and overturn Roths. Why would he have granted a new trial simply on the establishment that Capaldo knew Brian Mills? Wouldn't it have to be a little bit more than that? Such as, I knew him, I remembered him, I did answer the question correctly in voir dire, and I did have a bias against Jack Mills, Richard Jack Mills, because of my relationship with Brian Mills. Just the fact that she knew him would be enough to grant him a new trial automatically? What the trial court says is, in the absence of some evidence that Ms. Capadalo did know, as opposed to simply saying, under the circumstances she might have known, is insufficient to show any type of juror misconduct. The trial court was looking for that evidence. I mean, that would be a foundational, a predicate fact that she knew him, because she said she didn't know him. Now, she may have answered, I didn't know him because I forgot about him. Now I recollect that I did know him. That would be innocent misrecollection. It is possible innocent misrecollection, but neither the Supreme Court. You have to make a finding that she consciously lied to be guilty of juror misconduct. But before she can find that, she's got to find that she knew him. So I think you're overstating the effect of the evidence. Perhaps I am misstating. I'm just not sure that the law specifically requires an admission by Ms. Capadalo that she lied. It's not an admission, but further evidence it does. Correct. And we think that the evidence of the discipline, in connection with the fact that she was specifically asked about Brian Mills, and this discipline was fairly recent, and that she apparently denied knowing him even though he was the direct supervisor who gave her the discipline and who discussed it with her, and that she requested to be moved off his swing ship, would have provided that sufficiently strong indication that she was at least obfuscating her relationship with Brian Mills. Let me ask you one question, which wasn't clear from the record, and this is simply a procedural question. When did the defendant get released from custody, and when did he file his petition for federal habeas? Do you have those dates? I could do the habeas, and I might be able to do the released from custody. If you give me just a minute. Let's see. It appears that he mailed his petition in August of 2003, based upon what I'm looking at, his actual petition, and the judgment sheet indicates to me that his release date was projected to have been in 2003. Whether he was actually released in that time, I'm not sure. What I have in mind is if he was released before he filed his petition for habeas, we wouldn't have jurisdiction. We do have subject matter jurisdiction, because he is still subject to continuing what we term supervised release, which is a term probation parole conditions of supervision, and, of course, he is challenging the underlying conviction. Thank you. Thank you, Your Honor. Thank both counsel for the argument. The case just argued is submitted. That concludes this morning's session, and we are in the process.
judges: Farris, Clifton, Bea